United States District Court
District of Massachusetts

|  |  |
|---|---|
| SHIRLANE WAITHE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 24-12530-NMG |
| CARDINAL CUSHING CENTERS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims of employment discrimination and retaliation brought by plaintiff, Shirlane Waithe ("plaintiff" or "Waithe"), against her former employer and defendant, Cardinal Cushing Centers, Inc. ("defendant or "Cardinal").  Defendant moves to dismiss all counts and, for the following reasons, the motion will be allowed.

I.  **Background**

   A.  **Factual History**

According to the complaint, Waithe, who is African American, was hired by Cardinal in January, 2023, to serve as the Director of Residential Services.[1]  Throughout her term of

---

[1] At times, plaintiff's allegations in her complaint are inconsistent with those made in her filings in response to the motion to dismiss.  The Court will treat the allegations in the complaint as controlling. See Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc., 189 F. Supp. 3d 217, 224 (D. Mass. 2016) (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996)).

-1-

employment, Waithe was the only person of color in a leadership position at Cardinal.

During Waithe's new-hire orientation meeting, Ellen Long ("Long"), the Director of Training, allegedly used a racial slur and told black staff members that they "should not be surprised" to hear such language when working with clients. Waithe immediately reported the incident to Gina Rosas ("Rosas"), the Chief of Human Resources, and requested a conflict resolution effort. Waithe claims that management "failed to properly address" her concern.

Waithe performed her job satisfactorily, receiving positive performance reviews from the time she was initially hired until July, 2023, when she took medical leave following major surgery. Waithe was cleared by her doctor to return to work on a remote, part-time basis three weeks later. She did so, Waithe claims, because of the "multiple calls and over 50 reports that had been filed against her department during her three-week absence." She resumed fulltime work in person two months later.

Upon Waithe's return in mid-September, 2023, she met with her supervisor, Megan Campia ("Campia"). Campia expressed gratitude for Waithe's expeditious return and asked that Waithe reach out if she were considering leaving Cardinal for a position elsewhere.

Three weeks after their one-on-one meeting, Campia informed Waithe's department that Cardinal was over budget on associate and director-level positions. Campia did not rule out the possibility of a workforce reduction but stated that Cardinal was endeavoring to avoid it. She then met with Waithe alone and requested that she develop a plan to mitigate the potential workforce reduction.

After Campia informed staffers of the potential workforce reduction, Waithe began to receive, for the first time, accusations of poor performance. She purportedly continued to "experience and observe discriminatory and derogatory comments in the workplace, with no repercussions for those making them." In October, 2023, Long (the Director of Training) dismissed "Indigenous Day" as "stupid, . . . irrelevant, . . . [and] not even a real holiday."

In mid-October, 2023, Campia informed Waithe that she had been placed on a "final warning" due to her negligence in handling an open invoice for $10,000. Waithe explained that she had not received any prior communication about that issue. Campia responded that she had asked the IT Department to review Waithe's email account, where several emails from a third party regarding the request were found open. Waithe requested proof of the allegations but Campia did not provide it.

Waithe contends that the consequences for her performance challenges were much harsher than those imposed on her white colleagues. For instance, she reported Dave Ryder ("Ryder"), a white Associate Director, to Campia and Rosas for misconduct involving his romantic relationship with a supervised employee, Amy Figlioi ("Figioli"). After discovering their relationship, Waithe ordered Ryder to stop directly supervising Figioli. Not only did he ignore the directive, but he also approved her timesheets for services not performed. Management systematically ignored Waithe's persistent reports of Ryder's misconduct.

In January, 2024, Waithe was informed that Rosas and another employee, identified only as "Michelle" in the complaint, had discovered unsanitary conditions at two of the residential programs under Waithe's supervision. Waithe accepted responsibility for the problem but reminded her supervisors that the Associate Director, not Waithe, had oversight of the residential programs and, as such, she was not directly accountable. Waithe requested a meeting with Michelle to discuss the issue.

The next day, Waithe met with Campia for a weekly supervision meeting when she was 1) informed that there were "serious concerns" about the direction of Waithe's department, 2) given a final warning and 3) assigned to a Performance

Improvement Plan ("PIP").[2] Waithe declined Campia's request to sign the PIP because she disagreed with many of the representations made therein and was not given an opportunity to provide more context. Campia warned Waithe that refusal to sign could result in termination but declined to put that warning in writing.

Less than a week later, Waithe's therapist recommended she take a medical leave of absence due to the emotional distress caused by the purported hostile work environment at Cardinal. Waithe reportedly was suffering from insomnia and when her health did not improve during her leave of absence, she resigned in April, 2024.[3]

### B. Procedural History

In late March, 2024, Waithe filed a charge of racial discrimination against Cardinal with the Equal Opportunity Employment Commission ("EEOC") and Massachusetts Commission Against Discrimination ("MCAD"). In July, 2024, the EEOC issued its determination and notice of rights, in which it stated that it would not proceed with the investigation and "makes no determination about whether further investigation would

---

[2] The complaint alleges that this meeting occurred "[j]ust days after [Waithe] reported issues related to insubordination and disparate treatment that were impacting her health and job performance," but it is unclear what issues Waithe reported or to whom she made those reports.

[3] The timing and conditions of her departure from Cardinal, as alleged in the complaint, differ from her charge to the EEOC and MCAD, wherein she states that she was terminated by Cardinal on January 22, 2024.

establish violations of" Title VII. Waithe was instructed that she had 90 days from receipt of the notice to file a civil suit against Cardinal.

Waithe timely filed her complaint in this Court in October, 2024. She asserts four claims against Cardinal: 1) retaliation, in violation of Title VII and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count I), 2) disability discrimination, in violation of the ADA and M.G.L. 151B § 1, et seq. ("Chapter 151B") (Count II), 3) interference with medical leave, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. and the Paid Family Medical Leave Act ("PFMLA"), M.G.L. c. 175M § 1 et seq. (Count III) and 4) racial discrimination, in violation of Title VII and Chapter 151B (Count IV).

Cardinal, in response, moves to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). It contends that Waithe 1) did not exhaust her administrative remedies, 2) fails to allege interference in violation of the FMLA or PFML and 3) fails to establish a prima facie case of discrimination or retaliation. Plaintiff, in her opposition to defendant's motion, agrees voluntarily to dismiss her claim under the FMLA. As such, the Court will allow defendants' motion with respect to Count III insofar as it brings a claim

under the FMLA (leaving intact the claim brought under the Massachusetts PFML).

## II. **Motion to Dismiss**

### A.  **Legal Standard**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly,

-7-

550 U.S. at 556). Rather, the necessary "inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13. The assessment is holistic:

> The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez, 640 F.3d at 14) (cleaned up).

### B. Application

#### 1. Counts I, II and IV: Administrative Remedies

Before bringing a claim in court for employment discrimination or retaliation under Title VII, the ADA or Chapter 151B, a plaintiff must first exhaust her administrative remedies. Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) (as applied to Title VII claims); Everett v. 357 Corp., 904 N.E.2d 733, 746-47 (Mass. 2009) (as applied to Chapter 151B claims); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999) (as applied to ADA claims). That process begins with the filing of a charge at the EEOC or, in Massachusetts, at the MCAD.

Defendant responds, accurately, that the complaint includes no allegation that Waithe filed such a charge with the EEOC or MCAD. Waithe attempts to correct the record by attaching, as an exhibit to her opposition memorandum, a copy of the charge she

filed with the MCAD in March, 2024. That filing, nevertheless, is insufficient to preserve her claims under the ADA.

The purpose of the exhaustion requirement is to provide an opportunity for early reconciliation between employer and employee. Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990).

> That purpose would be thwarted if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action.

Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). A subsequent suit under Title VII, the ADA or Chapter 151B is therefore limited by the scope of both the charge filed and "the investigation which can reasonably be expected to grow out of that charge." Id. at 38 (quoting Less v. Nestle Co., 705 F. Supp. 110, 112 (W.D.N.Y. 1988)); see also Jorge, 404 F.3d at 565 ("Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge.").

Here, Waithe's initial charge at the EEOC and MCAD asserted only a claim of racial discrimination, alleging that

    (1) Waithe was the only person of color in leadership;

    (2) residential staff, all of whom were Caucasian, attempted to bring a petition to the CEO in an attempt to have [her] removed; and

(3) Waithe experienced racially charged bullying in an attempt to make her quit.[4]

The Court will also consider as exhausted Waithe's claim of retaliation under Title VII because, although not alleged in the initial charge, it was included in Waithe's rebuttal to Cardinal's position statement. See Ianatta v. Putnam Invs., Inc., 142 F. Supp. 2d 131, 135 (D. Mass. 2002) (holding that allegations raised in a rebuttal properly alerted the MCAD of plaintiff's claim because "the rebuttal was filed during the investigatory period, and before the right to sue letter was issued").

With respect to disability discrimination and retaliation, however, Waithe includes no such allegations in her initial charge or rebuttal at the MCAD.

Waithe avers that she demonstrated disability discrimination by alleging that Cardinal "fail[ed] to allow her full medical leave as accommodation for a disability."  That allegation, however, appears nowhere in the MCAD charge or the civil complaint.  The facts alleged by Waithe indicate that Cardinal signed off on all disability leave she requested. To the degree that the MCAD charge mentions Waithe's medical leave, it is only to note that she was permitted to take all medical

---

[4] No mention is made in the civil complaint of any incident wherein residential staff petitioned for her termination.

leave requested and, when she returned, her supervisor expressed appreciation for her commitment.

Similar to complaints filed pro se, administrative charges filed by unrepresented employees are "liberally construed in order to afford the complainant the benefit of any reasonable doubt." Lattimore, 99 F.3d at 464. Even a liberal reading of the charge and rebuttal does not, however, permit this Court to conclude that plaintiff exhausted her administrative remedies with respect to her disability claims. As such, the Court will dismiss Count II in its entirety and Count I insofar as it alleges retaliation based on her request for a reasonable accommodation.

### 2. Count I: Retaliation

Count I alleges that Cardinal retaliated against Waithe for reporting instances of racial discrimination.[5]

To establish a prima facie claim for retaliation under either Title VII or Chapter 151B, plaintiff must show that 1) she engaged in protected conduct, 2) she was subjected to an adverse employment action and 3) there was a causal connection between the protected conduct and the subsequent adverse employment action. Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). Plaintiff must

---

[5] The Court will not consider plaintiff's claim of retaliation due to her request for a reasonable accommodation due to her failure to exhaust her administrative remedies. See supra.

demonstrate that the protected activity was the but-for cause of the adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L.E.2d 503 (2013).

As a preliminary matter, Waithe appears to conflate allegations of discrimination with retaliation. In support of her claim of retaliation, Waithe avers that she was "disrespected by her colleagues and treated differently from white co-workers." One's membership in a protected class is not, in itself, a "protected activity" within the meaning of the two statutes. See Stratton v. Bentley Univ., 113 F.4th 25, 38 (1st Cir. 2024) ("Title VII's substantive provision protects against discrimination based on who one is (i.e., a member of a protected class) while the retaliation provision protects what one does (i.e., engage in protected conduct).")

Instead, an employee engages in "protected activity" by

> (1) oppos[ing] any practice made an unlawful employment practice by Title VII or (2) ma[king] a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under Title VII.

Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009) (quoting Long v. Eastfield College 88 F.3d 300, 304 (5th Cir. 1996))(internal quotation marks omitted). Protected activity, therefore, refers to "action taken to protest or oppose statutorily prohibited discrimination," including lodging

complaints with management. Fantini, 557 F.3d at 32 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).

The complaint includes only one allegation of plaintiff protesting racial discrimination, specifically, when she filed a complaint with HR regarding Long's use of a racial slur during her orientation.[6]  There is no allegation, however, of facts sufficient to show any causal connection between Waithe's report to HR and any subsequent adverse employment action.  She filed that report with HR three days into her employment and yet, as Waithe herself insists, she received only positive performance reviews for several months thereafter.  It was only after Waithe returned from medical leave that she allegedly began receiving negative performance reviews.  There are no allegations, other than the sequencing of the protected activity and the adverse employment action, to suggest causality. See Iorio v. Aramark Servicemaster, No. 03-cv-40147-FDS, 2005 WL 3728715, at *20 (D. Mass. Sept. 30, 2005) (citing MacCormack v. Boston Edison Co., 672 N.E.2d 1, 8 n.11 (Mass. 1996)) ("The mere fact that an adverse employment action followed protected conduct is not sufficient to make out a causal link between the two events").

Waithe attempts to resuscitate her claim by reference to her report of Ryder's misconduct as a protected activity.  But

---

[6] The complaint also alleges that Waithe "continued to experience and observe discriminat[ion] . . . in the workplace, with no repercussions" for offenders, but there is no indication that she ever protested thereof.

that is to no avail. She reported Ryder to HR for insubordination and improperly coding timesheets, not for any discriminatory acts. See Fantini, 557 F.3d at 32 (rejecting contention that plaintiff's reporting of a male colleague's violations of conflict-of-interest laws and financial disclosure laws constituted a protected activity). Nor does Waithe allege that she later protested the disparate treatment she received, as compared to Ryder.

The complaint therefore fails to allege facts sufficient to support a retaliation claim under Title VII or Chapter 151B and, as such, Count I will be dismissed.

### 3.   Count III: Paid Family and Medical Leave Act

Both the federal FMLA and state PFMLA prohibit employers from interfering with an employee's exercise of their rights afforded under the statutes. McKeon v. Robert Reiser & Co., Inc., 770 F. Supp. 3d 351, 376 (D. Mass. 2025) (quoting Rousseau v. Clark Univ., No. 22-cv-40118, 2023 WL 3435570, at *2 (D. Mass. May 12, 2023).

To establish a prima facie case of interference, plaintiff must establish that, inter alia, her employer "denied her FMLA benefits to which she was entitled." Id. Waithe asserts, in her opposition memorandum, that Cardinal "repeatedly" interfered with her right to take medical leave by

>unnecessarily contacting her during her leave, issuing threats or warnings regarding the potential loss of her job citing the numerous reports and complaints about her department and performance, all while Plaintiff was supposed to be away from work to recover.

Those allegations are nowhere to be found in her complaint. Instead, the complaint characterizes Waithe's decision to return to work as motivated by her dedication to her job and desire to address the

>multiple calls and over 50 reports that had been filed against her department during her three-week absence. [Waithe] knew that [Cardinal] needed her, and she did not hesitate to return.

She alleges that, upon her return, she met with her supervisor, who expressed gratitude for her return, highlighted her value to the program and asked her to notify HR if she was considering leaving her employment.

Plaintiff, at no point, alleges that she received "threats or warnings about the loss of her job." Any such allegations to that effect were not made in the complaint and, therefore, will be "treated as matters outside the pleadings for the purposes of Rule 12(b)." Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988); see Fisher v. Town of Orange, 885 F. Supp. 2d. 468, 471 n.1 (D. Mass. 2012).

According to the civil complaint, Waithe returned from leave due to her "commitment to her work" and she "did not hesitate to return" because she knew that "Cardinal needed her."

-15-

Waithe thus concedes that, to the extent her medical leave was cut short, it was a voluntary decision driven by her dedication to Cardinal, not made for fear of potential consequences if she remained on leave.

Because plaintiff does not allege facts to support a claim that Cardinal interfered with her medical leave, Count III will be dismissed.

### 4.   Count IV: Racial Discrimination

Both Title VII and Chapter 151B prohibit employers from discriminating against their employees on the basis of sex or race. 42 U.S.C. § 2000e-2(a)(1); M.G.L. c. 151B, § 4.  To allege a claim of discrimination on the basis of race, plaintiff must plead facts sufficient to establish that:

(1) she was a member of a protected class;

(2) she was qualified for her position;

(3) she suffered adverse employment actions; and

(4) there is evidence connecting her membership in the protected class to the adverse employment actions.

Luceus v. Rhode Island, 923 F.3d 255, 258 (1st Cir. 2019). Similarly, under Chapter 151B, a plaintiff must prove "membership in a protected class, harm, discriminatory animus, and causation." Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83 (1st Cir. 2004) (quoting Lipchitz v. Raytheon Co., 751 N.E.2d 360, 368 (Mass. 2001)).

The parties primarily dispute whether plaintiff has alleged facts sufficient to plead the element of an "adverse employment action," wherein an employer's conduct must

> affect[] or alter[] the conditions of employment, such as hiring, firing failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits.

Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (cleaned up).

The complaint does not allege what specific adverse acts Cardinal took but Waithe, in her opposition memorandum, indicates that she is alleging "constructive discharge." A charge of "constructive discharge" alleges that an employee's working conditions become so challenging that a reasonable person in her position

> would have felt compelled to resign [because] staying on the job while seeking redress would have been intolerable.

Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002).

Plaintiff insists that defendant's actions "deprived [her] of a free choice but to leave her employment. This Court disagrees. Waithe asserts that the following conditions created an intolerable environment:

> [She] was subjected to discrimination from early on in her employment, and her reports were not properly addressed. Indeed, she was subjected to final warnings, a PIP and accused of missing one invoice from a third-party[sic] while her white supervisee had been 'diverting' money from [Cardinal] . . . .

-17-

Those allegations do not plead constructive discharge. Her first claim appears to refer to the single instance when the Director of Training used a racial epithet as an example of language that new hires might hear from clients. The utterance of a single racial epithet by another employee does not, by itself, sufficiently alter the terms and conditions of employment to violate Title VII. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

The only other encounters plaintiff invokes as creating "intolerable" working conditions are 1) the times she received "final warnings" from Campia and 2) the notice that she would be placed on a PIP. Warnings and reprimands from supervisors do not constitute materially adverse employment actions if they do not carry with them "any tangible consequences." Da Costa v. Town of Plymouth, No. 11-cv-12133-MBB, 2014 WL 2998986, at *20 (D. Mass. July 1, 2014) (citing Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011)).

So too, "[p]lacing an employee on an improvement plan without any changes in his conditions of employment . . . fails the adverse action test." Simon v. Harvard Vanguard Med. Assocs., Inc., 2015 WL 7201170, at *7 (D. Mass. Nov. 16, 2015) (citing James v. C-Tran, 130 F. App'x 156, 157 (9th Cir. 2005)); Kleya v. Karl Storz Endovision, Inc., 436 F. Supp. 3d 455, 456 n.1 (D. Mass. 2020) ("[I]n the absence of any information on how

(or even whether) the [PIP] impacted the terms or conditions of her employment, [plaintiff] has not shown that the [PIP] itself created an intolerant environment (or that it otherwise constituted adverse action)."). Here, once again, plaintiff fails to allege that the warnings or the PIP altered the conditions of her employment.

The bar for establishing constructive discharge is high. To qualify, working conditions must be "so unpleasant that staying on the job while seeking redress would have been intolerable." Stratton, 113 F.4th at 39 (cleaned up) (quoting Marrero, 304 F.3d at 280). The complaint does not allege facts sufficient to constitute such conditions. As such, the motion to dismiss will be allowed as to Count IV.

## ORDER

For the reasons set forth above, defendant's motion to dismiss (Docket No. 6) is **ALLOWED**.

**So ordered.**

/s/ *Nathaniel M. Gorton*
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 8, 2025